# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BROOKLINE SPECIAL SITUATIONS FUND LLC and MAC LLC,** | )<br>)<br>)<br>) |
| **Plaintiffs,** | )<br>) |
| v. | ) **Case No.: 2:16-CV-388-VEH**<br>)<br>) |
| **CUP FOOD YOU PICK UP LLC et al.,** | )<br>)<br>) |
| **Defendants.** | )<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Defendants Cup Food You Pick Up, LLC, Cuplement Management, LLC, Bryan Degraw, Sr., and Paulette Degraw (collectively, "Cup") have moved to dismiss Plaintiffs Brookline Special Situations Fund, LLC's and Mac, LLC's (collectively, "Plaintiffs") complaint under the Securities Exchange Act of 1934's ("Exchange Act") section 20(a) and section 10(b) and Rule 10b-5 promulgated thereunder. In particular, Cup argues that the court should dismiss the complaint as barred by Alabama's abatement statute, or that the court should stay this case under the *Colorado River* doctrine. Neither argument has merit, so the motion will be **DENIED**.

# I

As this is a motion to dismiss, the well-pleaded factual allegations are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because the issues in this motion have little to do with the alleged underlying fraud, those allegations are only briefly set out. Cup was founded in 2013 by Bryan and Paulette Degraw, Sr. as a business that would "prepare and sell reasonably priced healthy meal options for people on the go packaged in cups." (Doc. 15 at 3 n. 2). In 2014, Cup made a private offering under section 4(a)(2) of the Securities Act of 1933, 15 U.S.C. § 77d, and Regulation D thereunder of certain convertible promissory notes. (Docs. 15, ¶ 21; 1-1 at 2). Also in 2014, Plaintiff Brookline agreed to act as "the exclusive placement agent for [Cup's] private offering of securities" and to use "best efforts" to find accredited investors. (Doc. 15, ¶¶ 11–12). Plaintiffs invested $125,000 in Cup in 2014 and 2015. (*Id.*, ¶¶ 20–23; 25). Things "went south" for Cup, which ceased operations in December 2014. (*Id.*, ¶ 24).

On December 21, 2015, Defendants, aside from Cuplement, sued Brookline (but not Mac) in the Circuit Court of Jefferson County, Alabama, in an action arising "out of the same facts and involv[ing] essentially the same legal issues" as this action. (Doc. 18, ¶ 1). This federal action was filed on March 3, 2016, with the state defendant becoming the federal plaintiff and vice-versa. The initial complaint

contained a defective jurisdictional allegation, so the court ordered repleader on the same day that Cup moved to dismiss, April 15, 2016. (*See* docs. 13 and 14). After the amended complaint was filed, *see* doc. 15, Cup again moved to dismiss on the same grounds: Alabama's abatement statute or, alternatively, *Colorado River* abstention. (Doc. 18).

## II

The so-called abatement statute provides that

> No plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case, the defendant may require the plaintiff to elect which he will prosecute, if commenced simultaneously, and the pendency of the former is a good defense to the latter if commenced at different times.

ALA. CODE § 6-5-440. "Unquestionably," this statute "stands for the proposition that a person cannot prosecute two suits at the same time, for the same cause against the same party." *Johnson v. Brown-Service Ins. Co.*, 307 So.2d 518, 520 (Ala. 1974). "The purpose of the rule is to avoid multiplicity of suits and vexatious litigation." *Id.* "The statute treats a defendant asserting a counterclaim as a plaintiff and thus may bar that defendant from asserting the same claim in another, simultaneous or later lawsuit." *Am. Cas. Co. of Reading, Pennsylvania v. Skilstaf, Inc.*, 695 F. Supp. 2d 1256, 1258 (M.D. Ala. 2010) (citing *Ex parte Parsons & Whittemore Alabama Pine*

*Construction*, 658 So.2d 414, 419 (Ala. 1995)). The statute also requires the abatement of compulsory counterclaims raised for the first time in a subsequent lawsuit. *Ex parte Bremen Lake View Resort, L.P.*, 729 So.2d 849, 851 (Ala. 1999). "[A] state court action may be abated if there is pending a federal court action involving the same cause against the same party." *Johnson*, 307 So.2d at 520.

Defendants' position is that, because this action under the Exchange Act includes what would be compulsory counterclaims (or so they say), the abatement statute bars this claim. Plaintiffs, for their part, cite two Alabama cases for the proposition that, as a matter of Alabama law, the abatement statute does not bar a suit when the second action is filed in federal court. For brevity, the court will call this the "later-federal exception." Neither party's position is entirely persuasive, although an argument implied in the penumbras and emanations of Plaintiffs' explicit argument is sufficient to reject the abatement statute as ground for dismissal.

The problem with the plaintiffs' explicit position is that it reads the Alabama cases too broadly; their holdings do not suggest that the abatement statute becomes a total nullity when the second suit is federal. Rather, one case, *Johnson*, supplies an exception to the abatement statute's application for <u>Alabama courts</u> when the second suit is federal; it says nothing about what a <u>federal court</u> must do. The other case, *Clark v. Wells Fargo Bank*, N.A., 24 So.3d 424 (Ala. 2009), applied the *Johnson* rule

to a counterclaim added by an amended answer in an earlier-filed state action after the later filing of a federal action pursuing claims identical to the counterclaims. The Alabama Supreme Court held that, at the intersection of the relation-back doctrine of ALA. R. CIV. P. 13 and *Johnson*, the counterclaims need not be abated. *Id.* at 429.

To understand why the later-federal exception is a bridge too far, one need only look at the assumption underlying the *Johnson* exception. The Alabama Supreme Court thought that a federal court "would not have abated the federal action," *Johnson*, 307 So.2d at 520. Were it otherwise, it would make little sense to exempt a state court from the abatement statute's "clear statutory prohibition" *Clark*, 24 So.3d at 429, on the maintenance of redundant lawsuits. So *Chase* and *Johnson* cannot purport to direct a federal court's application of the abatement statute when the fundamental premise of the exception established in those cases was a federal court's non-application of the abatement statute. *Cf. First Tennessee Bank, N.A. v. Snell*, 718 So.2d 20, 27 n. 3 (Ala. 1998) (See, J., concurring in the result) ("The abatement statute . . . cannot abate federal actions."). Put another way, it is oxymoronic for Alabama law to compel an outcome that the Alabama courts deem impossible.

The Alabama Supreme Court does not say so, but the reason for their

assumption is obvious: the *Erie* doctrine.[1] *See Johnson*, 307 So.2d at 520 (citing *Ermentrout v. Commonwealth Oil Co.*, 220 F.2d 527, 530 (5th Cir. 1955) (concluding that a federal court would apply the federal "rule" of abatement);[2,3] *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) ("federal courts are to apply . . . federal procedural law."). And the *Erie* doctrine is why Cup's argument fails, because "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that," *James v. Nationstar Mortgage, LLC*, 92 F. Supp. 3d 1190, 1198 (S.D. Ala. 2015), section "6-5-440 should not play any role in the decision whether to retain or dispose of litigation." *Skilstaf*, 695 F. Supp. 2d at 1260 (alteration, citation, and internal quotation marks omitted).

It is true, as Cup suggests, that federal courts in this state have held that the abatement statute is applicable in federal court. *See, e.g.*, *Central Reserve Life Ins. Co. v. Kiefer*, 211 F.R.D. 445, 448 (S.D. Ala. 2002); *Simmons v. Pulsoman Safety Equip. Corp., Inc.*, 471 F. Supp. 999 (S.D. Ala. 1979). But no federal court in

---

[1] So named for *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). The court generally uses "*Erie*," as shorthand for the complicated body of law that has grown up around the Rules of Decision Act, the Rules Enabling Act, and vertical choice of law generally.

[2] *Ermentrout* would be binding authority in the Eleventh Circuit. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding authority all decisions of the former Fifth Circuit as that court existed on September 30, 1981 and handed down prior to that date).

[3] But it has probably been abrogated by *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

Alabama has even <u>assumed</u> in a published opinion—let alone <u>held</u>—since 2008 that the abatement statute applies in federal court. The impetus for this sea change appears to be Judge Thompson's 2010 *Skilstaf* opinion, 695 F. Supp. 2d 1256, in which he persuasively rejected the first Alabama district court opinion to pass on the issue, *Simmons v. Pulsoman Safety Equip. Corp.,* 471 F. Supp. 999 (S.D. Ala. 1979).

In *Simmons*, a federal district judge sitting in Alabama, while noting that the parties had not addressed the *Erie* issue, relied on an Illinois federal district court decision conducting an *Erie* analysis of an Illinois statute that the *Simmons* judge believed was similar to Alabama's abatement statute. *Id.* at 1001. The Illinois statute, now cited as 735 ILL. COMP. STAT. 5/2-619(a)(3), provided that a lawsuit may be dismissed involuntarily when "there is another action pending between the same parties for the same cause." The Illinois federal judge concluded that the Illinois statute applied in federal court, and the *Simmons* judge reasoned that the Alabama statute should as well. *Id.*

Judge Thompson began by noting that the Seventh Circuit has expressly rejected the case on which *Simmons* relied. *See Skilstaf*, 695 F. Supp. 2d at 1259 (citing *AXA Corp. Sol. v. Underwriters Reinusrance Corp.*, 347 F.3d 272 (7th Cir. 2003)). He then adopted the Seventh Circuit's reasoning as equally applicable to Alabama's abatement statute:

> In our view, the problem addressed by § 2–619(a)(3) is closely akin to topics such as forum non conveniens, lis pendens, and venue statutes. Each of those areas addresses an organizational matter that is governed by the law of the sovereign that established the forum. In the case of a federal court, that sovereign is obviously the United States. We see no way for a federal court simultaneously to follow the Supreme Court's *Colorado River* doctrine and to apply the rule of § 2–619(a)(3). Given that conflict, and given the procedural nature of this problem, we conclude that the state statute should not have played any role in the decision whether to retain or dispose of this litigation.

*AXA Corp.*, 347 F.3d at 278. Although this court is inclined to think that ALA. CODE § 6-5-440 is more similar to the venue statutes than the *Colorado River* doctrine,[4] that taxonomy simply reinforces Judge Thompson's holding that Alabama's abatement statute does not apply in federal court. If a judicial exception to the jurisdictional and venue statutes trumps a similar state provision, federal statutes trump such a state provision *a fortiori*, to say nothing of the supreme elephant in the room, U.S. CONST. art. VI, cl. 2.

---

[4] The *AXA Corp.* court characterized the issue there as Illinois's and the United States' competing approaches to dealing with duplicative litigation. Undoubtedly, the Alabama statute is aimed at the same problem. But the Alabama statute is by its terms limited to the abatement of actions when two or more of the suits are in the "courts of [Alabama]," and the Alabama Supreme Court "has long been committed to the proposition that the pendency of a suit upon the same cause of action in [a]nother state is no cause of abatement of a suit instituted in this state." *Ex parte Buck*, 287 So.2d 441, 443 (Ala. 1973). The Illinois statute is not so limited, permitting the dismissal of suits even when the concurrent litigation is outside of Illinois. *See, e.g.*, *Seaboard Finance Co. v. Davis*, 276 F. Supp. 507 (N.D. Ill. 1967). Thus, the Alabama statute (mostly) addresses intrasystem redundancy, like the venue statutes, while the Illinois rule is capacious enough to address intersystem redundancy, like *Colorado River*.

Finally, a word on why the court undertook an *Erie* analysis when it was, at most, peripheral to the parties' arguments. *Cf. Esfeld v. Costa Crociere, S.P.A.*, 289 F.3d 1300, 1305 (11th Cir. 2002) (noting the district court's *sua sponte Erie* analysis, but not offering approval of it). The chief concern, since the *Erie* analysis comes out in Plaintiffs' favor, is whether the issue was sufficiently developed to put Cup on notice of it. First, Cup noted in its brief that the abatement statute applies in federal court, implicitly acknowledging the *Erie* issue. (See doc. 18, ¶ 7) ("Alabama courts have held that the abatement statute applies to both state and federal courts."). Second, the Alabama cases assumed the *Erie* analysis. This is not to say that Alabama's determination that a federal court would not apply the Alabama rule is dispositive of the federal court's decision on application (the circularity is dizzying); the point is that the Alabama cases were decided in *Erie's* shadow, providing some notice to Cup of the issue.

Third, and most importantly, Plaintiffs cited *Skilstaf*, which held that the abatement statute does not apply in federal court under *Erie*. And, although they appear to have (no doubt, unintentionally) misstated the holding as a broad later-federal exception, one need only read the page from which Plaintiffs' *Skilstaf* block

9

quote[5] is taken to see that it was immediately preceded by a lengthy quotation from *AXA Corp.*, making it clear beyond peradventure that *Skilstaf* was an *Erie* case. A federal court may rely on the true holding of a case cited by a party—even if the citing party misstates it and the other party ignores it.

### III

"The federal courts" have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and the abstention doctrines are the chief reason for the qualifier "virtually." Most of those doctrines are limited to narrowly circumscribed and quite specific scenarios. *See, e.g.*, *Younger v. Harris*, 401 U.S. 37 (1971) (abstention applied when federal jurisdiction would interfere with state criminal or quasi-criminal proceedings); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (abstention applied when delicately balanced, and very important, state policies would be gravely disrupted by federal intervention); *Railroad Comm'n. of Tex. v. Pullman Co.*, 312 U.S. 496 (1941) (abstention applied to case presenting a novel question of state law in which one interpretation presented serious constitutional questions). *Colorado*

---

[5] "'This court therefore rejects [the] holdings in *Simmons* and *Kiefer* and holds instead that, for a district court sitting in diversity, § 6-5-440 should not play any role in the decision whether to retain or dispose of litigation. The defendants' § 6-5-440 argument is without merit.'" (Doc. 20 at 8) (quoting *Skilstaf*, 695 F. Supp. 2d at 1260) (alteration supplied by the court to correct a typographic error appearing in *Skilstaf* and accurately reflected by Plaintiffs' quotation).

*River* is yet another flavor of abstention. It is more flexible in the sense that its application is not neatly pigeonholed, but this flexibility is tempered by its infrequent application; "abstention as a general matter is rare, [and] *Colorado River* abstention is particularly rare." *Jackson-Platts v. General Elec. Capital Corp.*, 727 F.3d 1127, 1140 (11th Cir. 2013).

The necessary—but not themselves sufficient—conditions for *Colorado River* abstention are "a parallel state action" involving "substantially the same parties and substantially the same issues." *Ambrosia Coal and Const. Co. v. Pages Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004). With that out of the way, the court must consider six factors before taking the "extraordinary step," *Noonan S., Inc. v. Cnty. of Volusia*, 841 F.2d 380, 383 (11th Cir. 1983), of abstaining:

> (1) the order in which the courts assumed jurisdiction over property; (2) the relative inconvenience of the fora; (3) the order in which jurisdiction was obtained and the relative progress of the two actions; (4) the desire to avoid piecemeal litigation; (5) whether federal law provides the rule of decision; and (6) whether the state court will adequately protect the rights of all parties.

*TranSouth Fin. Corp. v. Bell*, 149 F.3d 1292, 1294–95 (11th Cir. 1998). No single factor is dispositive, but they must be weighed "with a heavy bias" in favor of exercising jurisdiction. *Jackson-Platts*, 727 F.3d at 1141. "Only the clearest of justifications will warrant" abstention. *Moses H. Cone Mem'l. Hosp. v. Mercury*

*Const. Corp.*, 460 U.S. 1, 16 (1983) (quoting *Colorado River*, 424 U.S. at 818–19) (emphasis added in *Moses H. Cone*). Should abstention be warranted, the proper course is a stay of the action. *Moorer v. Demopolis Waterworks and Sewer Bd.*, 374 F.3d 994, 998 (11th Cir. 2004).

On this issue, the parties have spilled a substantial amount of ink arguing about whether this action and the state court action are truly the same, with Cup saying "yes" and Plaintiffs saying "no." This effort is misplaced because, even assuming *arguendo* that *Colorado River's* threshold requirement is satisfied, consideration of the six factors reveals abstention is not warranted.

Applying the factors to this case, I note that neither court has assumed jurisdiction over property; "where 'there is no <u>real</u> property at issue, this factor does not favor abstention.'" *Jackson-Platts*, 727 F.3d at 1141 (quoting *Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1306 (11th Cir. 2005)) (emphasis in *Maharaj*). The fora are within a mile of each other, and so they are equally convenient (or inconvenient). Cup argues that the maintenance of a second lawsuit is inconvenient because it is litigating outside of its home state (true), so the second-filed federal suit means the federal forum is inconvenient. This is question-begging; the mere existence of duplicative litigation and its attendant inconvenience does not make the second forum inconvenient <u>relative</u> to the first. Rather, this factor weighs whether one forum

is logistically superior to another, <u>not</u> whether unified litigation is superior to piecemeal. Moving on, federal law—esoteric federal law, at that—supplies the rule of decision in this Exchange Act suit. This factor militates against abstention. The one factor that seriously counsels in favor of abstention is the order of retention and progress of the litigation. The earlier suit was filed in state court, and discovery is underway in that case. But this is not enough to tip the scales in favor of abstention.

The sixth factor, the state court's ability to protect the parties' rights, counsels strongly—no, overwhelmingly—in favor of the exercise of federal jurisdiction. The parties do not mention it, but the Exchange Act "provides federal district courts with exclusive jurisdiction 'of all suits in equity and actions at law brought to enforce any liability or duty created by [the Exchange Act] or the rules and regulations thereunder.'" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S.Ct. 1562, 1568 (2016) (quoting 15 U.S.C. § 78aa(a)) (alteration in original). "[S]tate courts do not possess power to hear and decide this controversy." *Fin. Ind. Reg. Auth., Inc. v. Fiero*, 882 N.E.2d. 879, 882 (N.Y. 2008) (dismissing Exchange Act suit filed in New York state court). Thus, the Alabama court is totally unable to protect Plaintiffs' federal rights. This dovetails into the remaining undiscussed factor, the avoidance of piecemeal litigation. Where, as here, a federal court is the only forum for the vindication of federal claims, the litigation will necessarily be piecemeal as long as

13

the state claims remain in state court. There is no avoiding it.

Taking these factors together, along with the necessary bias in favor of retaining jurisdiction, the court concludes it should not close its doors when it is the only available doorway. Abstention is inappropriate. The motion is **DENIED**.

**DONE** and **ORDERED** this 13th day of June, 2016.

                                        **VIRGINIA EMERSON HOPKINS**
                                        United States District Judge